**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SHIMROZE MOTIN,

  *Plaintiff*,

v.

COMMISSIONER OF
SOCIAL SECURITY,

  *Defendant*.
_____/

CASE NO. 09-CV-13354

DISTRICT JUDGE ROBERT H. CLELAND
MAGISTRATE JUDGE CHARLES E. BINDER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I. RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II. REPORT

#### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

the Commissioner's decision denying Plaintiff's claim for supplemental security income benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 8, 11.)

Plaintiff protectively filed the instant claim on December 7, 2005, alleging that she became unable to work on April 30, 2003. (Transcript, Doc. 6 at 44.) Plaintiff has never worked. (Tr. at 52.) The claim was initially denied on May 31, 2006. (Tr. at 29-30.) In denying Plaintiff's claims, the Defendant Commissioner considered affective disorders (depression) and asthma as possible bases of disability. (*Id.*)

On March 12, 2008, Plaintiff appeared before Administrative Law Judge ("ALJ") Roy L. Roulhac, who considered the application for benefits *de novo*. (Tr. at 13-22.) At the time of the hearing, Plaintiff was 52 years of age. (Tr. at 16, 44.) In a decision dated August 19, 2008, the ALJ found that Plaintiff was not disabled because she retained the residual functional capacity to perform a limited range of light work. (Tr. at 20-21.) Plaintiff requested a review of this decision on October 17, 2008. (Tr. at 11.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on June 26, 2009, when, after the review of additional exhibits[2] (Tr. at 210-11), the Appeals Council denied Plaintiff's request for review. (Tr. at 5-7.) Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision on August 25, 2009.

---

[2]In this circuit, when the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

## B. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with

observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir.

1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C.    Governing Law**

The "[c]laimant bears the burden of proving [her] entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

5

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [her] RFC [residual functional capacity] and

6

considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

**D.     Administrative Record**

A review of the relevant medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff was treated by Olivia Batmanghelicki, M.D., Shakeela Shakoor, M.D., Dr. Pike and Dr. Dizell for her diabetes, asthma, hypertension and thyroid issues. (Tr. at 69-96, 161, 218-19.)

A physical Residual Functional Capacity (RFC) assessment performed in April 2006 concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, and that her ability to push or pull was unlimited. (Tr. at 109.) It also concluded that Plaintiff was occasionally limited in all the postural areas such as climbing, stooping, kneeling, and crouching, and that she has no manipulative, visual, communicative or environmental limitations other than that she should avoid concentrated exposure to fumes, odors, dust or gases. (Tr. at 110-12.) The examiner also noted that there was no treating or examining source statement in the file. (Tr. at 114.) It was found that Plaintiff's diabetes was "well controlled with medication." (Tr. at 106.)

An MRI of Plaintiff's brain was performed in June 2006 to evaluate Plaintiff for vasculitis due to her headaches. Although most findings were normal, there was some "[s]cattered white matter signal hyperintensities in FLAIR and T2-weighted images nonspecific in appearance." (Tr. at 157.)

Plaintiff was examined by Zahra Khademian, M.D., in May 2006, who diagnosed Plaintiff as having affective disorder, specifically "depression, due to medical problems/dysthymia." (Tr. at120-23.) As to the "B" criteria, the examiner concluded that Plaintiff was mildly limited in

activities of daily living, moderately limited in the ability to maintain social functioning and the ability to maintain concentration, persistence and pace, and had no episodes of decompensation. (Tr. at 130.)

A mental RFC assessment also performed in May 2006 concluded that Plaintiff was not significantly limited in understanding and memory, sustained concentration, and persistence, except that she was moderately limited in the ability to carry out detailed instructions, to maintain attention and concentration for extended periods, and to complete a normal work-day and week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. at 134-35.) Plaintiff was found not to be significantly limited in any social interaction or adaptation other than being moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. at 136.) The assessment concluded with the following comments:

> Claimant has H/O multiple medical problems associated with some decrease in level of her physical activities. She also has been depressed and has received Zoloft through her PCP. The current Psych, CE, indicated some element of dysthymia. Claimant has some problem with concentration and decreased interests. However she is able to take care of her personal needs, and also takes care of her children. Claimant also cooks cleans and has social activities. Considering the evidence in file, she is capable to do simple tasks in a regular basis at this point.

(Tr. at 136.)

Pursuant to a request by Disability Determination Services (DDS), V. Dang-Vu, M.D., examined Plaintiff in February 2008 and noted that Plaintiff "has been asthmatic for about seven years and she has wheezing mostly at night and she has to get up at night to use inhalers to go back to sleep." (Tr. at 98.) Plaintiff also indicated that she "gets short of breath when she gets depressed" and "after walking one block or climbing five or six steps, but she is still able to do her housework." (*Id.*) Dr. Dang-Vu concluded that Plaintiff "has history of diabetes and

8

hypertension" that "are controlled with current regimen," a "history of asthma" but "did not show any evidence of rales or wheezing on auscultation," and a "history of depression." (Tr. at 100.)

A chest x-ray taken in March 2008 showed "[n]o active disease." (Tr. at 202.) A cardiac consultation confirmed Plaintiff's hypertension and diabetes. (Tr. at 203.) A stress test performed in March 2008 was "normal" and showed "[n]o ischemia or scarring." (Tr. at 205.)

At the administrative hearing, the ALJ began by asking Plaintiff's representative "if [Plaintiff] can speak any English at all," and before her representative could answer, Plaintiff responded, "I can't understand everything." (Tr. at 215.) The ALJ asked if she could "understand some things," and Plaintiff responded, "a little bit." (*Id.*) Plaintiff answered all the questions from the ALJ regarding her background and current abilities until the interpreter helped explain that Plaintiff earned some money in 2007 by helping people go to Saudi Arabia to pray during a Muslim holiday. (Tr. at 215-16.) The ALJ then swore the interpreter in and it appears that the interpreter was utilized for the remainder of the hearing. (Tr. at 216.) Plaintiff testified that she has no trouble bathing, dressing or grooming herself, that she cooks for her family, does some shopping, and performs a "little bit of household work." (Tr. at 223-25.)

The ALJ asked a vocational expert (VE) to consider a person with Plaintiff's background, including her twelfth grade education in Bangladesh, to assume the "person is able to understand some English," can perform light work, i.e., can "lift 10 pounds frequently, 20 pounds occasionally; could occasionally perform such postural limitations as climbing ramps and steps; balancing, stooping, kneeling, crouching, and crawling; who should avoid dust and fumes; and be limited to performing simple tasks." (Tr. at 226.) The VE testified that such a person could perform the 8,000 small products assembler jobs, the 4,000 sorter jobs, or the 6,000 packer jobs that are available. (Tr. at 227.) If such person were only able to perform sedentary work, there

9

would still be 3,000 bench assembler positions, 1,500 sorter positions, and 1,600 surveillance system monitor jobs available. (Tr. at 228.)

### E. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since December 1, 2005, the application date. (Tr. at 18.) At step two, the ALJ found that Plaintiff's asthma, hypertension, diabetes mellitus, headaches and hypothyroidism were "severe" within the meaning of the second sequential step.[3] (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 19.) At step four, the ALJ found that Plaintiff did not have any past relevant work. (Tr. at 21.) At step five, the ALJ found that Plaintiff was a younger individual, age 18-49, on the date the application was filed, that on March 7, 2006, she became age 50, thus closely approaching advanced age and that she is able to perform a limited range of light work. (Tr. at 21-22.) Thus, the ALJ found that Plaintiff was not disabled. (Tr. at 22.)

### F. Analysis and Conclusions

### 1. Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to perform light work. (Tr. at 26.)

---

[3]Although in his findings the ALJ listed the above impairments as severe, I note that in the text following the conclusion he states that Plaintiff's "complaints of high blood pressure, diabetes, [and] hypothyroid . . . do not cause more than minimal limitations in her ability to perform basic work activities." (Tr. at 18.) "A nonsevere impairment is defined by the regulations as one that does not significantly limit the claimant's ability to do basic work activities." *Farris v. Sec'y of Health & Human Servs*, 773 F.2d 85, 89 (6th Cir. 1985). However, since there are other impairments the ALJ consistently described as severe and since the ALJ did not stop at step two of the sequential analysis, this inconsistency does not require reversal or remand. *See Hamilton v. Sec'y of Health & Human Servs*, No. 89-70773, 1993 WL 106845, at *6 (6th Cir. April 9, 1993) (finding *Farris* inapplicable where ALJ did not stop his evaluation at step two).

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

### a. Parties' Arguments

Plaintiff specifically contends that

> [t]he ALJ tacitly acknowledges the issues in this case that pertain to Voc. Rule 209.09 but does not fully apply them. Plaintiff factually is illiterate in English, but there is no finding that she is or is not. Plaintiff requests that the matter be remanded to resolve the issue of her lack of literacy. Such would apply to benefits after her 50th birthday - May 7, 1956.

(Doc. 8 at 7.)[4] Plaintiff notes that the ALJ asked Plaintiff whether she could read and write English at the administrative hearing and that Plaintiff replied that she "can't do it" because her "memory is not that good." (Doc. 8 at 6; Tr. at 215.) Plaintiff further contends that the hypothetical was not appropriate because the VE was asked to assume a person who has a high school education and Plaintiff's high school education was achieved in Bangladesh. (Doc. 8 at 5.) Since Plaintiff was assisted by a translator who spoke Bengali to Plaintiff, Plaintiff contends the ALJ should have been aware of the need to apply Rule 202.09. (*Id.*)

Defendant argues that neither Plaintiff nor Plaintiff's representative at the administrative hearing argued that Plaintiff is illiterate or unable to communicate in English. (Doc. 11 at 14.) Defendant further contends that Plaintiff did not present any evidence to support such an argument and, thus, did not establish that she is entitled to a determination of disability. (Doc. 11 at 13-15.) Finally, Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff is able to perform a significant number of jobs in the relevant economy. (Doc. 11 at 15-18.)

### b. Illiterate or Unable to Communicate in English

#### i. Standards

Under 20 C.F.R. Part 404, Subpart P, App. 2, Rule 202.09, if a plaintiff who is closely approaching advanced age is "illiterate or unable to communicate in English" and has a past work history of either "unskilled or none," the Rules call for a finding that the plaintiff is disabled. "Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though that person can sign his or her name." 20 C.F.R. § 416.964(b)(1).

---

[4]The Court presumes that Plaintiff's fiftieth birthday was actually May 7, 2006.

If a person has a "limited or less" education and is "[a]t least literate and able to communicate in English," the Rules call for a finding of not disabled. 20 C.F.R. Part 404, Subpart P, App. 2, Rule 202.10. "Generally, an illiterate person has little or no formal schooling." 20 C.F.R. § 404.1564(b)(1). "Marginal education," on the other hand, means "ability in reasoning, arithmetic and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a sixth grade level is a marginal education." 20 C.F.R. § 404.1564(b)(2).

"Limited education" means "ability in reasoning, arithmetic, and language skills, but not enough to allow a person whose educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education." 20 C.F.R. § 404.1564(b)(3).

"High school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. We generally consider that someone with these educational abilities can do semi-skilled through skilled work." 20 C.F.R. § 404.1564(b)(4).

"In formulating the grid rules, it was assumed that a person who is unable to communicate in English would naturally be illiterate in English." *Chavez v. Dep't of Health & Human Servs.*, 103 F.3d 849, 852 (9th Cir. 1996). Inability to communicate in English does not take into account any "other language a person may be fluent in" because "it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language." 20 C.F.R. § 404.1564(b)(5).

### ii. Waiver

Plaintiff raises the issue of illiteracy or inability to communicate in English in her brief in support of her motion for summary judgment and that she failed to raise the issue in either her application for benefits or at any time during the administrative hearing. The United States Supreme Court has held that, for purposes of judicial review, a social security claimant does not waive an issue by failing to raise it in the Appeals Council. *Sims v. Apfel*, 530 U.S. 103, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000) (plurality opinion). The Court expressly declined to address whether an issue is waived if it is not raised in the administrative hearing. *Id.* at 107.

The First Circuit has held that allowing a claimant to raise in court an issue not raised at the Appeals Council stage is "entirely different from failing to offer evidence in the first instance to the ALJ, which is far more disruptive of the review function." *Mills v. Apfel*, 244 F.3d 1, 4 (1st Cir. 2001). The First Circuit further noted that "Justice O'Connor's 'swing vote' in *Sims* rested on the distinct and narrow ground that the regulations there in question might have misled applicants as to the duty to raise issues in the Appeals Council." *Id.* at 4-5. Therefore, the First Circuit held that failure to raise an issue before the ALJ waives the issue. *Id.*

The Eighth Circuit has also held that failure to raise a claim in an application for benefits or during the administrative hearing waives the claim. *Anderson v. Barnhart*, 344 F.3d 809, 814 (8th Cir. 2003) (citing *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996) (ALJ is "under no 'obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability'") (citation omitted)).

The Ninth Circuit has held that, "at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). The Ninth Circuit reasoned that

counsel "knew that all relevant evidence should have been brought to the ALJ's attention." *Id.* Some cases since *Meanel* have held that an argument not raised before the ALJ is waived without addressing whether the claimant was represented by counsel or not. *See, e.g., Howard v. Astrue*, 330 Fed. App'x 128, 130 (9th Cir. 2009); *Brady v. Barnhart*, 36 Fed. App'x 914 (9th Cir. 2002).

In the instant case, Plaintiff's failure regards an alleged basis for disability, i.e., inability to communicate in English, of which she would be abundantly aware. The instant case does not present the harsh situation where an uncounseled plaintiff failed to meet a technical legal requirement or did not meet an evidentiary burden that plaintiff may have been unfamiliar with. Here, it is neither unreasonable nor harsh to hold the *pro se* Plaintiff responsible for listing and describing to the ALJ those easily discernible impairments which she believes cause her to be disabled. I therefore suggest that the Court find that Plaintiff has waived the issue of being illiterate or unable to communicate in English.

### iii. Merits

Alternatively, should the court address the issue, I suggest that remand is not necessary and that the record supports the ALJ's decision declining to make use of medical-vocational guideline 202.09. The record reveals that the ALJ began by asking Plaintiff's representative "if [Plaintiff] can speak any English at all," and before her representative could answer, Plaintiff responded, "I can't understand everything." (Tr. at 215.) The ALJ asked if she could "understand some things," and Plaintiff responded, "a little bit." (*Id.*) Plaintiff was able to understand and answer the ALJ's questions until the translator injected herself into the conversation to explain "Hajj" to the ALJ. It appears that the initial use of the translator was based on a need to explain Muslim customs rather than out of a necessity born out of an inability to communicate in English. I further note that the failure to assert an inability to communicate in English on her application for benefits indicates

15

that Plaintiff did not consider language to be a factor in her alleged inability to work. Nor is there any indication of an inability to communicate in English noted on any of the medical records. Finally, I note that Plaintiff's own reason given for any difficulties in reading or writing English is that her "memory is not that good," not that she has a language deficit. (Tr. at 215.)

I therefore suggest that the ALJ's decision is supported by substantial evidence. *Newsome v. Comm'r of Social Security*, 528 F. Supp. 2d 733, 737(W.D. Mich. 2007) (finding substantial evidence supported ALJ's conclusion that plaintiff had a limited education rather than marginal education or illiteracy where although plaintiff and his wife testified he could not read or write, plaintiff had filled out forms and had told his doctor he did not read or write "very well" as opposed to at all and where his daughter indicated that plaintiff liked to read the paper and do the word search); *Barbee v. Astrue*, No. 1:08-CV-265, 2009 WL 4110259, at *6-8 (E.D. Tenn. Nov. 23, 2009) (finding substantial evidence supported ALJ's conclusion that plaintiff was not illiterate where although plaintiff testified he was illiterate, the evidence showed plaintiff had a marginal education through fourth grade, and where plaintiff indicated he did not do well with written instructions because he can't remember and where "treating physician's records contain nothing to suggest Plaintiff was functionally illiterate"); *Miracle v. Astrue*, No. 08-65-JBC, 2009 WL 774098, at *2-3 (E.D. Ky. Mar. 20, 2009) (granting defendant's motion for summary judgment over plaintiff's argument that the ALJ failed to apply Rule 202.09 where "plaintiff admitted that she might be able to read some words in newspapers or comics out of the newspaper" and where she "testified that she completed the sixth grade" because sixth grade education is marginal education that means the plaintiff can perform simple, unskilled jobs).

### c. Remaining Findings

I further suggest that the ALJ's findings also follow the opinions of the vocational expert which came in response to detailed and proper hypothetical questions that accurately portrayed Plaintiff's individual impairments in harmony with the relevant objective record medical evidence. (*See* Tr. at 226-228.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

For all these reasons, after review of the relevant record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve

all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.

                                       s/ Charles E Binder
                                       CHARLES E. BINDER

Dated: April 6, 2010                       United States Magistrate Judge

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: April 6, 2010                  By     s/Patricia T. Morris
                                                   Law Clerk to Magistrate Judge Binder